UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LORENZO RUBIO,**

    **Plaintiff,**

v.                                                               Case No.  8:09-cv-1652-T-30MAP

**DEPUTY HOWARD LOPEZ, individually
and as a member of the Hillsborough County
Sheriff's Office; and SHERIFF DAVID GEE,
Hillsborough County Sheriff, in his official
capacity,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Dispositive Motion for Summary Judgment (Dkt. 31) and Plaintiff's Response in Opposition (Dkt. 53).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that Defendants are entitled to final summary judgment on all of Plaintiff's claims.

## BACKGROUND

On July 9, 2007, around 2:30 p.m., Plaintiff Lorenzo Rubio arrived drunk at the law office of his girlfriend, Theresa Wigginton.  Plaintiff was wearing a bullet proof vest and a tactical vest with a large "POLICE" insignia.  According to Plaintiff, he was going to Wigginton's law office to find his firearm, which Wigginton was holding, so that he could kill himself.  Plaintiff was agitated and frustrated about an incident that occurred with his

divorce proceeding. Plaintiff said he wore the vests so that law enforcement could not kill him; Plaintiff wanted to be the one to take his own life. Plaintiff began ransacking the law office in search of his firearm.

Plaintiff was very angry, aggressive, and shouted that he wanted his gun. In Plaintiff's own words, he was "out of his mind." (Dkt. 31, Ex. Y). There were four other people in the law office. After finding only Wigginton's firearm, Plaintiff continued to aggressively search for his gun, scaring the other people in the law office. Plaintiff and Wigginton began to argue and a male attorney attempted to intervene, which resulted in a physical altercation. The other women in the office were frightened and locked themselves in a conference room, where they called the police.

Deputy Kenneth Schaaf heard a dispatch to a "priority 1 domestic call." The call was updated to state that there were persons possibly armed and there was a hostage situation. Schaaf voluntarily responded to the call because he was close to the location. Alone, he went inside the law office. When he saw Plaintiff wearing the tactical vests, Schaaf drew his firearm. Plaintiff was angry, yelling, screaming, and uncooperative. Wigginton then got between Plaintiff and Schaaf, to prevent Schaaf from shooting Plaintiff. Schaaf did not see Plaintiff with a weapon, so he holstered his firearm. Schaaf then ordered Plaintiff to get on the ground. Plaintiff failed to comply and a physical fight ensued between Schaaf and Plaintiff. Schaaf was forced to use his taser, which made Plaintiff more agitated. Plaintiff attempted to grab Schaaf's gun and taser. According to Schaaf, he believed that Plaintiff was trying to kill him and he was in fear for his life. While Plaintiff and Schaaf continued to

physically fight, other deputies arrived and were able to assist Schaaf with handcuffing Plaintiff and shackling his legs.

According to all of the deputies at the scene, Plaintiff remained uncooperative, hostile, and continually and repeatedly told them that he would come to their homes and kill them and their families.

Defendant Deputy Howard Lopez also responded to the scene based on a call that there was an armed individual that barricaded himself in a law office and had people held hostage at gunpoint. He arrived after the deputies had Plaintiff handcuffed and shackled. The other deputies walked Plaintiff to his car and Lopez assisted them with putting Plaintiff in his car. While Plaintiff was in the back of the car, Lopez spoke to the other deputies about what happened inside the law office and they told him that they had to assist Schaaf with fighting Plaintiff because Plaintiff was "going crazy" and they thought they were going to die.

Lopez said it was a hot afternoon and that his car was running the entire time Plaintiff was inside the patrol car, with the air conditioner on. He said Plaintiff was a "pretty good-sized guy" and was about 180 to 220 pounds. Plaintiff was yelling from the back seat and began kicking the door and window of the patrol car. Lopez told Plaintiff to stop kicking at the door and window, but Plaintiff continued. Lopez decided that Plaintiff needed to be hobble-tied,[1] so that he would stop kicking, which could injure Plaintiff and possibly allow

---

[1] According to Lopez, a hobble-tie is performed with a nylon cord, which usually has a clip on one end. The cord is wrapped around both feet to keep them secured, pulled up to the back, and
(continued...)

Plaintiff to escape. Previously, Lopez had arrestees break out the glass of his patrol car; on one occasion, his patrol car's window was broken after two kicks. In order to hobble-tie Plaintiff, Lopez took Plaintiff out of the patrol car and placed him on the cement. The patrol car was located in the parking lot, the ground was black asphalt, and there was not a grassy area nearby. He said Detective Joseph Testa assisted him with applying the hobble restraints and the entire process took about one minute and five seconds.[2] Lopez did not apply any other force to Plaintiff other than the hobble-tying. He did not hear Plaintiff complain that he was burning and Plaintiff did not complain about being hurt or injured on the car ride to the district office.

Testa testified that he responded to a "priority 1 call," which meant that something violent may be involved. He heard on the call that there was a subject inside a law office who was possibly armed and who may have individuals barricaded. When he arrived at the scene, Plaintiff was in the back of Lopez's patrol car. He heard Plaintiff shouting obscenities and making death threats toward deputies and their families. He said Plaintiff began to kick at the window and door of the vehicle. He did not know if the air conditioning was on, but said that normally deputies leave their vehicle's air conditioning running. After Plaintiff started repeatedly kicking inside the vehicle, Lopez either two or three times verbally

---

[1](...continued)
looped through and clipped to the handcuffs, so that the feet are up and attached to the hands behind the person's back and the person cannot kick. This usually requires the officer to place his knees across the back of the person's shoulder in order to keep the person from pulling up his head.

[2] When Lopez re-enacted this event with Dr. Farhad Booeshaghi, Defendants' expert on the issue of the cause of Plaintiff's injuries, the hobble-tie took one minute and fifteen seconds.

commanded Plaintiff to stop. He did not think just opening the door would have been sufficient to get Plaintiff to stop, particularly based upon the information he had as to how violent Plaintiff's behavior had been inside the law office.

Lopez asked Testa for his help to hobble-tie Plaintiff. Testa assisted Lopez with laying Plaintiff on the payment. Lopez hobble-tied Plaintiff. Testa felt it was safe to place Plaintiff on the parking lot pavement to hobble-tie him. He did not see any grass nearby. He did not hear Plaintiff complain that he was burning or sizzling. He did not see any injuries on Plaintiff. He said the process probably took a couple of minutes.

Cpl. Bill Williams also responded to the scene as a back-up unit to a distress radio call for help from Schaaf. He arrived at the law office during the time that deputies were struggling with Plaintiff on the ground. Plaintiff was threatening to kill the deputies. After Plaintiff was handcuffed and his legs restrained, four deputies carried Plaintiff to Lopez's patrol car. Williams began interviewing witnesses. While conducting his investigation, he heard a commotion coming from Lopez's vehicle. Plaintiff had been placed on the ground to be hobble-tied. Williams assisted with putting Plaintiff back in the patrol car. Williams testified that Plaintiff was hobble-tied to prevent his escape and from breaking out the vehicle's window. There was nowhere else to place Plaintiff other than the cement under the circumstances. He spoke with Plaintiff in the patrol car after he was hobble-tied. Plaintiff was defiant, belligerent, and threatened him. Williams summoned EMS for Plaintiff, but Plaintiff refused treatment at the scene. He did not see any injuries on Plaintiff at the scene. He did see injuries on Plaintiff later at the Hillsborough County Sheriff's Office ("HCSO")

in the Brandon district. He ordered that photos be taken of Plaintiff's injuries. Plaintiff again refused treatment from EMS at the district office. However, after he talked more with Plaintiff and got him to calm down, he ordered deputies to take Plaintiff to Tampa General Hospital ("TGH").

Plaintiff was treated at TGH for second degree thermal burns to his face and chest and was prescribed 1-2 Acetaminophen tablets to be taken every 4 to 6 hours as needed. Plaintiff was released by TGH on the same evening to the HCSO Jail.

On February 26, 2008, Plaintiff pled guilty to crimes of battery on a law enforcement officer, resisting an officer with violence, and attempting to deprive an officer of means of protection and battery.

On or about August 19, 2009, Defendants were served with Plaintiff's complaint. The following counts are the only counts that remain at issue: Count I (42 U.S.C. Section 1983 excessive force against Lopez individually); Count VI (supplemental state intentional infliction of emotional distress tort claim against Lopez individually); Count VII (supplemental state battery tort claim against Lopez individually); Count VIII (supplemental state battery tort claim against Sheriff David Gee in his official capacity); and Count IX (punitive damages against applicable defendants).

During discovery, Plaintiff provided verified interrogatory answers. When asked to "describe in detail how the incident described in the complaint happened, including all actions taken by [Plaintiff] to prevent the incident," Plaintiff responded as follows:

> I was put into a patrol car after being arrested and my hands were cuffed behind me. My legs were shackled together. The vehicle's air conditioning was not running. I began kicking the door and window to try to get the attention of the deputies. I wanted them to either open the windows or turn on the air because the heat inside the vehicle was intolerable. They ignored me for a while. Finally, they opened the door, pulled me out, stood me up and shoved me down to the pavement. They then pressed my body further into the hot pavement until it burned the front of my upper torso. All I could do was scream, "you're burning me." They did not remove me from the pavement but instead pressed my face against the pavement when I tried to raise my head to scream, until I had second degree burns to the body and face.

(Dkt. 31, Ex. BB).

Plaintiff testified during his deposition that when Lopez put him on the payment to hobble-tie him, he screamed that the pavement was burning him. He said that his skin started to "sizzle" and that, in response, Lopez pushed his head down, which made his face hit the pavement and burn. He stated that he was on the ground for several minutes.

All of the witnesses present during the time that Plaintiff was hobble-tied stated that, although Plaintiff was yelling, they did not hear Plaintiff say that the pavement was burning him, or hear the sound of his skin sizzling.

## **DISCUSSION**

### I.  **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).  However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.     Qualified Immunity

Defendants contend summary judgment is proper on the excessive force count (Count I) against Lopez, individually, because he is entitled to qualified immunity.  The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To determine the applicability of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted).  Importantly, the official's subjective intent is irrelevant to the inquiry. *Id.*  The Supreme Court has established a two-part test to determine the applicability of qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).  First, the Court must determine whether the Plaintiff has alleged the

deprivation of a constitutional right. *Id.* The second step in the analysis is to determine whether Plaintiff's right was "clearly established" at the time the alleged violation occurred. *Id.*

It is undisputed that Lopez was acting within the scope of his discretionary authority when the incidents described in the complaint occurred. Accordingly, it must be determined whether the facts, when viewed in the light most favorable to Plaintiff, establish that Lopez committed a constitutional violation and if so, whether Lopez's constitutional right was "clearly established" at the time of the violation. *See Trammell v. Thomason*, 335 Fed. Appx. 835 (11th Cir. 2009).

### A. Violation of a Constitutional Right

Plaintiff contends Lopez violated his constitutional rights by exercising excessive force when he hobble-tied Plaintiff on the hot cement ground and allowed Plaintiff to be burned. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To assert a violation of the Fourth Amendment for the use of excessive force, Plaintiff must demonstrate that (1) a seizure occurred and (2) the force used to effect the seizure was unreasonable. *Troupe v. Sarasota County, FL*, 419 F.3d 1160, 1166 (11th Cir. 2005).

Determining whether the force used was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake.

*Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir. 1999). Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "A constitutional violation occurs when the officer's use of force is 'objectively unreasonable' in light of the totality of the circumstances at the time the force is used." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case," including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. In addressing these three factors, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

Based on the facts viewed in the light most favorable to Plaintiff, Lopez's actions did not constitute a violation of Plaintiff's Fourth Amendment right to be free from excessive force. Lopez had been told that Plaintiff was dangerous, violent, and "crazy" based on the events that occurred in the law office. And his decision to hobble-tie Plaintiff was in

response to Plaintiff's behavior of repeatedly kicking the patrol car's door and window. Plaintiff admitted in his interrogatory answer and during his deposition that he was being uncooperative in the back seat of the patrol car when he was kicking at the windows and/or doors and screaming.

Lopez and Testa hobble-tied Plaintiff consistently with how they were trained, so that Plaintiff would be prevented from breaking the patrol car window, which could allow him to escape or which could injure Plaintiff.  Lopez used no other force such as punches, kicks, chemical agents, or electronic control devises/tasers.  Even assuming that this process took several minutes, as Plaintiff contends, it still does not amount to excessive force.  Also, there is nothing in the record that suggests that Lopez, or any other witness at the scene, understood what Plaintiff was screaming.  Without pointing to any record evidence, Plaintiff appears to assume that Lopez understood his screams and intentionally burned him by pushing him on the ground.  And it would defy logic to require officers, who are dealing with stressful and dangerous situations that require quick-thinking, to have to test the pavement's temperature and find a blanket or grassy area before they engage in hobble-tying an out-of-control arrestee, as Plaintiff seems to suggest in his response.

In conclusion, this Court must be mindful of *Graham's* explicit recognition of, and allowance for, a measure of deference to police judgment given the "tense, uncertain and rapidly evolving" circumstances that police often confront.  490 U.S. at 396-97, 109 S.Ct. 1865 ("[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense,

uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation").[3] Plaintiff's after-the-fact arguments, including that he was kicking the window/door because he was suffocating, and that he did not pose any kind of threat to the officers are simply not relevant. Accordingly, in light of the totality of the circumstances, Lopez's actions did not constitute excessive force and did not violate Plaintiff's Fourth Amendment rights.

### B. Whether Plaintiff's Constitutional Rights Were Clearly Established

Even assuming, *arguendo*, that Lopez's conduct was not objectively reasonable, such that it arguably violated Plaintiff's constitutional right against the use of excessive force, Plaintiff's constitutional right against the type of force used in the situation in question was not clearly established.

In determining whether a constitutional right is clearly established, the salient question is whether the state of the law at the time of the incident gave officials fair warning that their behavior was unlawful. *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

---

[3] The Eleventh Circuit has held that a court should not "view the matter as judges from the comfort and safety of [ ] chambers, fearful of nothing more threatening than the occasional paper cut ... [Rather, the Court must] see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Mongeau v. Jacksonville Sheriff's Office*, 197 Fed.Appx. 847, 850 (11th Cir. 2006) (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1333-34 (11th Cir. 2004)).

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 739, 122 S.Ct. 2508 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Official immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Long v. Slaton,* 508 F.3d 576, 584 (11th Cir. 2007) (quoting *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). An official is entitled to official immunity "unless their 'supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Id.* (quoting *Pace v. Capobianco,* 283 F.3d 1275, 1282 (11th Cir. 2002)).

In the Eleventh Circuit, "the law can be 'clearly established' for [official] immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 826 n. 4 (11th Cir. 1997)).

Thus, in order to show that Lopez is not entitled to official immunity, Plaintiff must be able to point to earlier case law from the Eleventh Circuit, the Florida Supreme Court, or from the United States Supreme Court that is "materially similar ... and therefore provided clear notice of the violation" or to "general rules of law from a federal constitutional or

statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances" and established clearly the unlawfulness of Lopez's conduct. *Long,* 508 F.3d at 584.

Plaintiff has not provided, and independent research does not reveal, a statute or constitutional provision or specific case barring the type of force used in the situation in question. To the contrary, the case law actually supports Lopez's actions. *See Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009) (holding that although hobble-tie may not have been entirely necessary, officers' attempts to restrain the suspect, who was struggling, but not forcefully attacking the officers, were not so violent and harsh to be considered an egregious violation of a constitutional right despite the unfortunate result of the suspect's death); *Garrett v. Athens-Clarke County*, 378 F.3d 1274 (11th Cir. 2004) (holding that officers were entitled to qualified immunity even when, during the course of the suspect's arrest, the suspect was sprayed with pepper spray and then fettered by tying his wrists less than 12 inches from his ankles, which lead to his death)

Also, Lopez's conduct was not so egregious as to be clearly impermissible.

Accordingly, Lopez is entitled to qualified immunity on Count I of Plaintiff's complaint.

### III.  State Law Claims

Defendants also move for summary judgment on the state law claims of battery and intentional infliction of emotional distress (Counts VI, VII, VIII). For the same reasons set

forth herein, the Court concludes that Defendants are entitled to summary judgment on these claims.[4]

A defendant may be liable for battery under Florida law if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *City of Miami v. Sanders,* 672 So. 2d 46, 47 (Fla. 3d DCA 1996). The required intent "is not necessarily a hostile intent, or a desire to do harm." *Spivey v. Battaglia,* 258 So. 2d 815, 816-17 (Fla. 1972). "Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it.... However, the knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent." *Id.*

In order to establish a claim for intentional infliction of emotional distress under Florida law, a plaintiff must show: "(1) deliberate or reckless infliction of mental suffering by the defendant; (2) by outrageous conduct; (3) which conduct of the defendant must have caused the suffering; and (4) the suffering must have been severe." *Lapar v. Potter*, 395 F. Supp. 2d 1152, 1160 (M.D. Fla. 2005)

Even considered in the light most favorable to Plaintiff, there is no evidence in the record that Lopez intended to commit an unlawful battery. Similarly, there is no evidence supporting a claim of intentional infliction of emotional distress. Plaintiff's injuries were

---

[4] Notably, a lawful arrest without excessive force cannot meet the elements of battery.

simply incidental to Lopez's justified use of force. And there is no evidence in the record suggesting that Lopez intended to hurt Plaintiff by burning him on the ground.

Accordingly, Defendants' Motion for Summary Judgment is granted as to the state law claims asserted against Lopez in his individual capacity and Gee in his official capacity.[5]

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Dispositive Motion for Summary Judgment (Dkt. 31) is hereby GRANTED.

2. The CLERK is directed to enter final summary judgment in favor of Defendants **DEPUTY HOWARD LOPEZ** and **SHERIFF DAVID GEE** and against Plaintiff.

3. The CLERK is directed to terminate any pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 3, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-1652.msj31.frm

---

[5] Consequently, Defendants are also entitled to summary judgment on Plaintiff's claim for punitive damages (Count IX).